ERASTUS J. HORTON v. GEORGE E. HUBBARD ET AL.

*Land contract—Specific performance—Parties—Execution levy.*

1. The right of a vendee to the specific performance of a land contract cannot be cut off by *fraudulent* attachment levies, nor by the levy of a *valid* attachment or execution against the vendor *after* the date of the contract.

2. Equity, having once taken jurisdiction to enforce the specific performance of a land contract, will retain it to adjust the conflicting claims to the purchase money, which the vendee will be decreed to bring into court for the party entitled to it; citing *Thurston v. Prentiss*, 1 Mich. 198; *Hanchett v. McQueen*, 32 Id. 25; *Stevenson v. Jackson*, 40 Id. 702.

3. An attachment or execution creditor is a *proper* party to a bill to enforce the specific performance of a land contract, for at most he stands in the place of the vendor, and is bound by his duty, if he claims his interest in the land; citing *Morris v. Hoyt*, 11 Mich. 17; *Daily v. Litchfield*, 10 Id. 36; *Woodward v. Clark*, 15 Id. 104; *Rogers v. Odell*, 36 Id. 411; *Chapman v. Morgan*, 55 Id. 126.

Appeal from Kent. (Burch, J.) Argued October 10 and 13, 1890. Decided November 14, 1890.

Bill for specific performance of land contract. Complainant appeals. Decree reversed, and case remanded. The facts are stated in the opinion.

*Birney Hoyt,* for complainant, contended:

1. A bill is not multifarious unless disconnected and independent causes of action are brought upon the record; citing *Wales v. Newbould*, 9 Mich. 58; and a primary rule of equity pleading requires that all persons should be made parties who are interested in the subject-matter; citing Id. 59.

2. When the subject-matter of the litigation is *entire* in itself, it is not necessary that each defendant should have an interest in the suit co-extensive with the claim set up in the bill; citing *Ingersoll v. Kirby*, Walk. Ch. 69.

3. It is a general rule in specific performance cases that all persons who have acquired any interest in the lands from the vendor subsequent to the contract are proper parties, and usually they are necessary parties; citing *Daily v. Litchfield*, 10 Mich. 36; *Moris v. Hoyt*, 11 Id. 17; *Woodward v. Clark*, 15 Id. 104; *Covell v. Cole*, 16 Id. 225; *Bird v. Hall*, 30 Id. 374; *Berry v. Innes*, 35 Id. 189, 46 Id. 518; *Rogers v. Odell*, 36 Id. 411; *Stevenson v. Jackson*, 40 Id. 702; *Baldwin v. Fletcher*, 48 Id. 604; *Gamble v. Folsom*, 49 Id. 141; *Farfield v. Barbour*, 51 Id. 62; *Gardner v. Warren*, 52 Id. 309; *Chapman v. Morgan*, 55 Id. 126; *Taft v. Taft*, 73 Id. 502.

4. In such a case the interests of other persons in the land who are not immediately connected with the contract, or title of the complainant, may be ascertained, and a decree made holding them subject to complainant's rights or paramount thereto, and such disputed claims as to rights in the land between such persons when made defendants may be settled upon the pleadings between complainant and the defendants; citing *Thurston v. Prentiss*, 1 Mich. 198; *Page v. Webster*, 8 Id. 264; *Cummings v. Freer*, 26 Id. 134; *Hanchett v. McQueen*, 32 Id. 25; *Bonker v. Charlesworth*, 38 Id. 81; *Lawrence v. Jarvis*, 36 Id. 282; *Seminary v. Kiefer*, 43 Id. 111; *Rogers v. Blackwell*, 49 Id. 192.

5. The bill charges that the attachment was a fraudulent contrivance to prevent the delivery of the deed mentioned in the bill, and a general allegation of fraud is sufficient; citing *Tong v. Marvin*, 15 Mich. 60; *Reeg v. Burnham*, 55 Id. 53; as is an offer to pay the consideration of the contract; citing *Morris v. Hoyt*, 11 Mich. 18; and the decree may require that the unpaid money be brought into court; citing *Stevenson v. Jackson*, 40 Mich. 702, 705.

*Edwin F. Sweet* and *Willis B. Perkins,* for defendant McConnell, contended:

1. The bill has a five-fold aspect.
    *a*—To remove cloud from title.
    *b*—To confirm a deed.
    *c*—For specific performance.
    *d*—To obtain possession of a deed.
    *e*—To restrain by injunction the return of the deed to the grantors, and the sale or incumbering of the property by them.
    —Each of which separate causes is supported by appropriate allegations, and followed by an appropriate prayer for relief.

2. The respective theories of the bill clearly destroy each other. The different grounds are wholly distinct, and each ground alleged is sufficient as stated to sustain a bill, and the bill is

therefore multifarious; citing Story, Eq. Pl. (8th ed.) § 271*b*.

3. A bill framed with a double aspect must be consistent with itself. It should not set up different and distinct causes of complaint which destroy each other; citing *Hart v. McKeen,* Walk. Ch. 417; *Winslow v. Jenness,* 64 Mich. 84.

4. To ask alternate relief is proper enough, but to grant it must not result in complete destruction of, or be in opposition to, the other prayer and the allegations on which it is founded; citing *Ingersoll v. Kirby,* Walk. Ch. 65; *Wales v. Newbould,* 9 Mich. 45; *Hunton v. Platt,* 11 Id. 264; *Taylor v. King,* 32 Id. 42; *Woodruff v. Young,* 43 Id. 548.

5. It has been held that a bill filed for the two-fold purpose of foreclosing a mortgage and removing a cloud from the title is bad for misjoinder and for multifariousness; citing *Chamberlain v. Lyell,* 3 Mich. 448; *Horton v. Ingersoll,* 13 Id. 409; *Bank v. Bronson,* 14 Id. 361; *Wilkinson v. Green,* 34 Id. 221; *McClure v. Holbrook,* 39 Id. 42.

CAHILL, J. On March 1, 1889, the complainant filed his bill in the circuit court of the county of Kent for the specific performance of a land contract. On May 27, by leave of the court, he filed an amended bill, praying that a contract between himself and the defendants George E. Hubbard and Christiana A. Hubbard, by which they had agreed to convey to him lot 17, block 5, in Ellsworth's addition to the city of Grand Rapids, for the sum of $1,950, be specifically performed.

The facts set out in the bill are substantially as follows: That on January 5, 1889, Christiana A. Hubbard, the wife of George E. Hubbard, was the owner of the property in question; that her husband, acting for her, and by her authority, entered into á contract with the complainant by which he agreed to sell and convey to him the lot in question for $1,950. Complainant was to assume a mortgage on the lot, pay some back taxes, and the balance he was to pay in money. In performance of this agreement, a deed was drawn up and executed by the Hubbards, and sent to the Old National Bank of Grand Rapids, for delivery to the complainant upon his

payment of the amount that was due in money. Upon an inspection of the deed by the complainant, it appeared that it had been executed by George E. Hubbard in Arizona, and that there was no clerk's certificate attached showing that it had been executed according to the laws of that territory. The complainant declined to accept the deed in that form, and it was sent to Arizona for the purpose of having a certificate attached. The bill shows that the contract made by George E. Hubbard with complainant was acquiesced in and ratified by his wife, who joined in the deed. In a few days the deed was returned to the Old National Bank perfected.

In the mean time, and after the deed had been first received at the bank, and before its return from Arizona, the defendant McConnell had commenced an attachment suit against George E. Hubbard, and levied upon the land in question, so that, when complainant called at the bank to close up the trade, he found this levy as a cloud upon the title. He called upon the defendants Hubbard to remove this cloud, and perform the contract, by delivering him the deed of the property. This they were unwilling or unable to do. Upon this point the bill states:

" And your orator further shows that, after said Christiana A. Hubbard had heard of the said levy of attachment by said John McConnell, the said Christiana A. Hubbard signed and made the following direction and instrument, and sent the same to Harvey · J. Hollister, or to your orator, to be delivered to said Harvey J. Hollister, viz.:

"'GRAND RAPIDS, MICH., Feb. 12, 1889.
"'H. J. HOLLISTER:
' "Please hold deed and papers from George E. Hubbard to E. J. Horton until records are satisfactorily fixed up.
"'MRS. GEORGE E. HUBBARD.
"'Grand Haven, Mich.,·Feb'y 12, 1889.'

" And on or about the 27th day of February, 1889, the said Christiana A. Hubbard sent to Harvey J. Hollister a communication as follows, viz.:

"'GRAND HAVEN, MICH., Feb. 27, '89.
"'MR. H. J. HOLLISTER, Grand Rapids, Mich.:
"'*Dear Sir:* Please return to me at once the deed I sent you, and oblige,

"'Yours resp'ty,
"'MRS. GEO. E. HUBBARD.'

"And on or about the 1st day of March, A. D. 1889, the said Christiana A. Hubbard wrote, signed, and sent to your orator a letter as follows, which was received by him soon after being sent, viz.:

"'GRAND HAVEN, MICH., March 1, 1889.
"'MR. E. J. HORTON,
"'Grand Rapids, Mich.
"'*Dear Sir:* I don't think there is any need of your making trouble about the lot. I have not received any other deed, and should I receive one I will not sign it; but I don't think I will receive one. I think there is some mistake about it. I know Mr. Hubbard wants to do what is right, and I know he will do right by you. He is so far away, and I do not want to get into any trouble. I have written him to-day, and I know he will do what is right. If you will wait until he can be heard from, I am sure it will be all settled satisfactory to you. I know it will be all right, and I promise you I will not sign any deed should one come. I am here alone, and I do not want trouble, and I know there is some mistake, and it will be all right, if you will wait until we can hear from him.
"'Very resp'y yours,
"'MRS. GEO. E. HUBBARD.'

"And your orator further shows, on information and belief, that said George E. Hubbard and Christiana A. Hubbard have abandoned the said contract, and have refused to perform the same, and said Christiana A. Hubbard has instructed and required the said bank, or its cashier, to return the said deed to her, with the avowed purpose of destroying the said deed, and refusing to perform said contract.

"And your orator is informed by the officers of said bank that, in pursuance of said instructions, said bank, or its cashier, will send said deed to said Christiana A. Hubbard; and your orator fears and apprehends that said bank, or its cashier, will send said deed to her, and that she, or said George E. Hubbard, will destoy the same, unless restrained by the injunction of this court.

"And your orator further show that said premises are not free from incumbrances, as appears by the record in the office of said register of deeds; that said alleged attachment levy is still of record in the said office, and no insurance policy on the houses on said land has ever been sent or delivered to your orator.

"And your orator further shows that said attachment levy is void, and is a gross fraud upon your orator, and that said John McConnell, before said attachment levy was made, or suit com-

menced, had notice that said land had been purchased by your orator of said George E. Hubbard and Christiana A. Hubbard, and that your orator then had said deed in his hands, and said deed was shown to the attorney for said John McConnell, who made the affidavit for him for the said attachment, before such affidavit was made.

"And your orator charges that said John McConnell has conspired with certain parties unknown to your orator to prevent your orator's obtaining the said deed after being properly certified, and to obtain the said land for himself.

"And your orator charges on information and belief that said George E. Hubbard is not and was not indebted to said John McConnell in any sum, and that said George E. Hubbard was not a non-resident of this State, and that no cause for said attachment existed, and that your orator's right to said land is prior to said alleged attachment levy.

"But your orator charges that the said levy, being so filed, raises a cloud upon the title to said land, and greatly depreciates the value thereof, and makes the same unsalable."

The prayer of the bill is as follows:

1. That the contract for the purchase of said premises may be specifically performed, and that the Hubbards be required to convey such lands to the complainant discharged of such levy.

2. That the attachment levy may be discharged.

3. If the levy is of any force, as found by the court, for any amount, that the same may be ascertained, and paid out of the balance of the consideration due from the complainant, and the levy discharged.

4. That the deed before executed, and on deposit in the Old National Bank, be delivered to complainant.

5. That the court may decree that the said deed was delivered to complainant before said levy, and that complainant is the owner of the land, and that the levy is wholly void.

6. That the deed from the Hubbards be produced and placed upon record, and that they be restrained by injunction from receiving the said deed, now with Harvey J. Hollister, cashier, and from making or executing any deed or conveyance of said land, or incumbering the same, and that the Old National Bank, and Hollister, its cashier, be restrained from returning said deed to said parties or delivering it to any person other than your orator, and for general relief.

The defendants Hubbard answered. Defendant McCon-

nell demurred to the bill, generally, for want of equity, and, specially, that the bill was multifarious. The Old National Bank and Hollister, defendants, did not appear. The demurrer of defendant McConnell was sustained in the circuit, and the bill dismissed as to him. Complainant appeals.

I think the demurrer should have been overruled. Although the bill prays for certain relief to which complainant is not entitled, still it makes a plain case for equitable relief. Complainant, having entered into a contract with the Hubbards for the purchase of the land in question, upon the terms set out in the bill, is entitled to have such contract specifically performed, unless there is some obstacle in the way of such performance, which the court, in the exercise of its equity jurisdiction, cannot surmount. The only obstacle to such performance is the levy of defendant McConnell. But the bill alleges that McConnell, before commencing his suit, or making his levy, knew that complainant had purchased the land of Mrs. Hubbard, who was the owner of the land; that the attachment was against George E. Hubbard, but that he was not indebted to McConnell, and that no cause for the attachment existed; that the attachment levy is void, and a fraud upon complainant; that McConnell has conspired with certain persons unknown to complainant to prevent complainant from obtaining a deed of the land purchased by him. These facts being admitted by the demurrer to be true, the attachment levy does not stand in the way of a decree for the specific performance of the contract by the Hubbards. The right that a purchaser of land under a contract has to have the contract performed would not be very valuable if the remedy to enforce it could be cut off by fraudulent attachment levies. If the attachment is in good faith, and is prosecuted to

83 MICH.—9.

judgment against George E. Hubbard, it can only reach his interest in the land, which appears by the bill to be nothing. But the specific performance of a land contract, at the suit of the vendee, cannot be prevented by the levy of a valid attachment or execution, after the date of the contract, against the vendor.

Equity has jurisdiction in such cases, and, having once taken jurisdiction to enforce the contract, will retain it to adjust the conflicting claims to the purchase money due from the vendee. The vendee will be decreed to bring his money into court for the party entitled to it. *Stevenson v. Jackson,* 40 Mich. 702; *Thurston v. Prentiss,* 1 Id. 198; *Hanchett v. McQueen,* 32 Id. 25. In such case the attachment or execution creditor is a proper party to the bill, for at most he stands in the place of the vendor, bound by his duty, if he claims his interest. *Morris v. Hoyt,* 11 Mich. 17; *Daily v. Litchfield,* 10 Id. 36; *Woodward v. Clark,* 15 Id. 104; *Rogers v. Odell,* 36 Id. 411; *Chapman v. Morgan,* 55 Id. 126 (20 N. W. Rep. 821).

The decree below will be reversed, and the case remanded; the defendant McConnell to have 20 days in which to answer.

MORSE and GRANT, JJ., concurred. CHAMPLIN, C. J., and LONG, J., did not sit.